UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LANDSTAR BLUE, LLC,

    Plaintiff,

vs.                                           Case No. 3:25-cv-200-MMH-MCR

PERFECT 1, LLC, GOZAL INC.,
and JANE AND JOHN DOES 1–10,

    Defendants.

_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant Gozal Incorporated's Supplemental Motion to Dismiss as to Counts IV and VI of Plaintiff's Amended Complaint and Supporting Memorandum of Law (Doc. 29; Motion), filed on June 17, 2025. Plaintiff, Landstar Blue, LLC (Landstar), filed its Response and Opposition to Defendant Gozal Incorporated's Supplemental Motion to Dismiss Counts IV and VI of the Amended Complaint (Doc. 31; Response) on July 2, 2025. Accordingly, this matter is ripe for review.

## I.   Background[1]

Landstar is a property broker authorized by the Federal Motor Carrier Safety Administration. See Amended Complaint (Doc. 12), filed on March 13, 2025, ¶ 3. Defendants, Perfect 1, LLC (Perfect), and Gozal Inc. (Gozal), are for hire motor carriers authorized to transport property in interstate commerce. Id. ¶¶ 6, 8. On August 1, 2018, Landstar and Gozal entered into a contract under which Gozal agreed to transport cargo for Landstar's customers. Id. ¶ 16. Likewise, on April 18, 2019, Landstar and Perfect entered into a contract under which Perfect agreed to transport cargo for Landstar's customers. Id. ¶ 13. Under their respective agreements, Perfect and Gozal were responsible for performing transportation services and liable for damages caused by cargo loss, damage, or delay. See Amended Complaint ¶¶ 38, 57; see also Exhibit A (Doc. 1-1; Perfect Agreement) at 5–7 ¶¶ 8, 11; Exhibit B (Doc. 1-2; Gozal Agreement) at 4–5 ¶¶ 8, 11. In the contracts, Gozal and Perfect further agreed to "defend[], indemnify[], and hold[] Landstar harmless 'from and against all loss, liability, judgment, damage, claim, fine, cost or expense, including reasonable attorneys'

---

[1] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint (Doc. 12), filed on March 13, 2025, as true, consider the allegations in the light most favorable to Plaintiff, Landstar Blue, LLC, and accept all reasonable inferences that can be drawn from such allegations. See Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint and may well differ from those that can ultimately be proved.

fees, arising out of or in any way related to'" the performance or breach of the agreements. See Amended Complaint ¶¶ 41–42, 57–58; see also Perfect Agreement at 6 ¶ 9; Gozal Agreement at 5 ¶ 9.

On February 20, 2023, Landstar arranged for Perfect to transport a shipment from New Albany, Ohio, to McDonough, Georgia, for one of Landstar's customers. See Amended Complaint ¶¶ 19, 20. At this time, Perfect and Gozal used a shared dispatch service, id. ¶ 21, and a dispatcher under this shared service accepted tender of the shipment on Perfect's behalf. Id. ¶ 22.

Despite the fact that it was not an authorized property broker, id. ¶ 72, Perfect then arranged for Gozal to transport the shipment, id. ¶ 23. And, on February 22, 2023, a driver under Gozal's authority picked up the shipment in good condition. Id. ¶¶ 24, 25. During transit, the driver was involved in an accident, damaging the shipment. Id. ¶ 26. Ultimately, the shipment was deemed a total loss. Id. ¶ 27.

Pursuant to the contract with its customer, Landstar was liable to the customer for the damage to the shipment. Id. ¶ 29. As such, Landstar paid $113,116.32 to the customer's third-party claim administrator, and, in turn, the customer assigned its claim to Landstar. Id. ¶¶ 30, 31. Both Perfect and Gozal failed to indemnify and hold Landstar harmless for the cargo loss, costs, and attorneys' fees. Id. ¶¶ 1, 42, 59. As a result, Landstar initiated this action on February 26, 2025, by filing a six-count complaint against Perfect, Gozal, and

unidentified officers, directors, and/or principals of both entities. See generally Amended Complaint. Against Gozal, Landstar brings a claim under the Carmack Amendment, a claim for breach of contract, and a claim for unlawful brokerage activities. See id. ¶¶ 50–54, 55–61, 70–75.

## II.   Legal Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Discussion

In the Motion, Gozal seeks dismissal of Landstar's claims for breach of contract (Count IV) and unlawful brokerage activities (Count VI) pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), arguing that Landstar fails to state a claim upon which relief can be granted. See Motion at 1. Upon

review, the Court finds that Gozal's Motion is due to be denied as to Count IV and granted as to Count VI.

**A. Landstar's Count IV Breach of Contract Claim**

To state a claim for breach of contract under Florida law, a plaintiff must plead (1) the existence of a valid contract, (2) a material breach, and (3) damages. Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999). Here, Gozal points out that the Gozal Agreement contains multiple blanks, does not contain Landstar's or Gozal's entity name, and does not provide Landstar's entity name under the list of "Brokers." See Motion ¶¶ 11–14. Therefore, Gozal asserts that "even considering the contract itself and assuming it to be true on its face, there is no contract" between the parties. Id. ¶¶ 15, 16.

Gozal's argument is unpersuasive. Whether Gozal and Landstar are parties to the Gozal Agreement necessitates a factual determination that cannot be resolved on a motion to dismiss. See Yellow Telescope, LLC v. Timothy Robert Miller, MD, Inc., No. 14-24308-CIV, 2015 WL 5269723, at *2 (S.D. Fla. Sept. 10, 2015) (denying a motion to dismiss because, although there was a discrepancy between the plaintiff's name and the named party in the contract, whether the parties were bound by the contract was a factual dispute that could not be resolved at that stage of the proceedings).[2] In the Amended

---

[2] The Court notes that although decisions of other district courts are not binding, they

Complaint, Landstar alleges that it entered into the Gozal Agreement with Gozal. See Amended Complaint ¶¶ 16, 56. This allegation is not contradicted by empty blanks or omissions in the attached agreement. As such, Landstar adequately pleads the existence of a valid contract.

Next, Gozal asserts that Landstar's breach of contract claim is preempted by the Carmack Amendment. See Motion ¶ 17. The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, "requires a common carrier who transports property to issue to the shipper a bill of lading or a receipt, and makes the common carrier liable to one entitled to recover under the bill of lading or receipt for loss or injury to the property." See Quintessence of Home Appliances, Inc. v. R+L Carriers, Inc., No. 3:08-CV-618-J-32MCR, 2008 WL 11336255, at *2 (M.D. Fla. Nov. 23, 2008). In doing so, it "creates a uniform rule for carrier liability when goods are shipped in interstate commerce" by "preempt[ing] state law claims arising from failures in the transportation and delivery of goods." Smith v. United Parcel Serv., 296 F.3d 1244, 1246 (11th Cir. 2002); see also 49 U.S.C. § 14706. Notably, the Supreme Court has instructed that Carmack Amendment preemption is expansive, embracing "all losses resulting from any failure to discharge a carrier's duty as to any part of the

---

may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

agreed transportation…." See Georgia, F. & A. Ry. Co. v. Blish Milling Co., 241 U.S. 190, 196 (1916); see also Smith, 296 F.3d at 1247 (collecting cases).

While Carmack preemption is expansive, it is not all-encompassing. Indeed, the Eleventh Circuit has acknowledged that "situations may exist in which the Carmack Amendment does not preempt all state and common law claims." Smith, 296 F.3d at 1248–49; see also UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc., 750 F.3d 1282, 1293, 1295 (11th Cir. 2014) (holding that the Carmack Amendment does not preempt an indemnity claim for attorneys' fees arising out of a contract between a broker and a carrier). However, "[o]nly claims based on conduct separate and distinct from the delivery, loss of, or damage to goods escape preemption." Smith, 296 F.3d at 1248–49.

Here, Landstar asserts that its breach of contract claim is not preempted because its claim "is not based on the cargo loss itself, but rather on an independent contractual indemnity obligation." See Response at 11. As such, according to Landstar, "[t]he Carmack Amendment is no impediment to [Landstar's] claim for attorneys' fees." Id. at 12. While, in the Response, Landstar attempts to limit its breach of contract claim to attorneys' fees and costs, Landstar's breach of contract claim is pleaded far more broadly. See, e.g., Amended Complaint ¶ 60 ("As a direct result of Gozal's breach of the Agreement, Gozal is liable for Landstar's actual damages in the amount of

$113,116.32."). Indeed, in its breach of contract claim, Landstar appears to seek recovery for both actual damages resulting from the damaged shipment and for attorney's fees and costs. See id. ¶¶ 60, 61.

While the Eleventh Circuit has held that a broker's indemnity claim for attorneys' fees and costs is not preempted by the Carmack Amendment, see UPS Supply Chain Sols., 750 F.3d at 1293, 1295, as far as the Court can determine, no federal appellate court has addressed whether the Carmack Amendment preempts an indemnity claim for actual damages pursuant to a contract between a broker and a carrier. See id. at 1294 n.12. However, the greater weight of authority holds that such a claim is not preempted. See Dahlsten Truck Line, Inc. v. T.J. Marquart & Sons, Inc., No. 8:14CV54, 2015 WL 13849219, at *6 (D. Neb. May 18, 2015) (collecting cases). Courts following the majority view reason that, because the Carmack Amendment was enacted to regulate the shipper-carrier relationship—protecting the rights of shippers, not brokers—a contract between a broker and a carrier falls outside of the Carmack Amendment's preemptive field. See, e.g., Exel, Inc. v. S. Refrigerated Transp., Inc., No. 2:10-CV-994, 2012 WL 3064106, at *5 (S.D. Ohio July 27, 2012) (holding that a contract establishing the basics of a brokerage relationship "falls outside of the shipper-carrier relationship and outside of the preemptive field of the Carmack Amendment"); InTransit, Inc. v. Excel N. Am. Rd. Transp., Inc., 426 F. Supp. 2d 1136, 1141 (D. Or. 2006) (reasoning that an

action based on a contract between a broker and a carrier was "sufficiently removed from a shipper or some other party who has rights" to sue a carrier under a bill of lading). These courts further note that "[c]arriers face no risk of patchwork regulation by being allowed to enter into brokerage contracts that establish liability to shipping brokers." Exel, 2012 WL 3064106, at *6; see also UPS Supply Chain Sols., 750 F.3d at 1294 ("Enforcement of a self-imposed undertaking poses no risk of patchwork regulation or different demands in different jurisdictions.").

The Court finds the reasoning of these cases persuasive. Here, the Gozal Agreement establishes an ongoing business relationship between two sophisticated parties: a broker and a carrier. See generally Gozal Agreement. It does not focus on a specific shipment under a bill of lading, but rather, establishes the brokerage relationship between the parties. See generally id. This relationship falls outside of the preemptive scope of the Carmack Amendment. See Exel, 2012 WL 3064106, at *5. Moreover, enforcing a contract between a broker and a carrier does not undermine the goal of uniformity underpinning the Carmack Amendment: the contract will be interpreted the same regardless of the jurisdiction in which a claim is brought. As such, Landstar's claim for breach of contract is not preempted by the Carmack

Amendment and is not due to be dismissed for failure to state a claim.[3]

### B. Landstar's Count VI Unlawful Brokerage Activities Claim

Finally, Gozal argues that Landstar's claim for unlawful brokerage activities under the Moving Ahead for Progress in the 21st Century Act (MAP-21 Act), 49 U.S.C. § 14916, is conclusory and fails to provide sufficient factual allegations to state a claim. See Motion ¶¶ 20, 22, 23.

As relevant here, 49 U.S.C. § 14916 provides:

> **(a) Prohibited activities**. —A person may provide interstate brokerage services as a broker only if that person—
> **(1)** is registered under, and in compliance with, section 13904; and
> **(2)** has satisfied the financial security requirements under section 13906.
>
> …
>
> **(c) Civil penalties and private cause of action.** —Any person who knowingly authorizes, consents to, or permits, directly or indirectly, either alone or in conjunction with any other person, a violation of subsection (a) is liable—
>
> …
>
> **(2)** to the injured party for all valid claims incurred without regard to amount.

---

[3] Some courts hold that the Carmack Amendment preempts indemnity claims between brokers and carriers if the broker "steps into the shoes of a shipper and asserts a claim for damages based on a bill of lading." See Dahlsten Truck Line, 2015 WL 13849219, at *6 (collecting cases). While Landstar has "stepped into the shoes of a shipper" in Count III of the Amended Complaint, see Amended Complaint ¶ 53, the Court interprets Counts III and IV as pleaded in the alternative to each other. See Fed. R. Civ. P. 8(d)(2). As such, Count IV is not due to be dismissed at this stage of the proceedings. See Exel, 2012 WL 3064106, at *7 (holding that the Carmack Amendment did not preempt a broker's breach of contract claim even though the broker, who was assigned the shipper's claim, also pleaded a claim under the Carmack Amendment).

- 11 -

> **(d) Liable parties.** —The liability for civil penalties and for claims under this section for unauthorized brokering shall apply, jointly and severally—
> **(1)** to any corporate entity or partnership involved; and
> **(2)** to the individual officers, directors, and principals of such entities.

49 U.S.C. § 14916. Accordingly, to state a claim for unlawful brokerage activities against Gozal, Landstar must plead factual allegations making it plausible that Gozal knowingly authorized, consented to, or permitted Perfect, <u>acting as a broker</u>, to provide brokerage services without the requisite authority. See id.

Upon review, the Court finds that Landstar fails to adequately state a claim upon which relief can be granted in Count VI of the Amended Complaint. Indeed, for Gozal to be liable under 49 U.S.C. § 14916, Perfect must have provided brokerage services, and it must have done so <u>as a broker</u>. See 49 U.S.C. § 14916(a) ("A person may provide interstate brokerage services <u>as a broker</u> . . . ." (emphasis added)). Federal law defines a "broker" as "a person, <u>other than a motor carrier</u> or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2) (emphasis added). In contrast, a "motor carrier" is "a person providing motor vehicle transportation for compensation." Id. § 13102(14). In a given

transaction, an entity can be classified as a motor carrier or as a broker, but not both. See 5K Logistics, Inc. v. Daily Exp., Inc., 659 F.3d 331, 335 (4th Cir. 2011) ("[T]here is no overlap in the statute between 'carriers' and 'brokers' … ."); Essex Ins. Co. v. Barrett Moving & Storage, Inc., 885 F.3d 1292, 1300 (11th Cir. 2018) (noting that brokers are "purposefully distinguished from motor carriers" throughout the Interstate Commerce Act). Further, Department of Transportation (DOT) regulations state that "[m]otor carriers … are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." 49 C.F.R. § 371.2.[4] Notably, the Eleventh Circuit has endorsed DOT's definition of the term "broker" as well as its distinction between brokers and motor carriers. Essex, 885 F.3d at 1300–01 (holding that an entity is a carrier under the Carmack Amendment when it "has agreed with the shipper to accept legal responsibility for that shipment").

Here, Landstar states multiple times in the Amended Complaint that Perfect acted as a broker. See Amended Complaint ¶ 23 ("Under its broker authority, Perfect then arranged for the Shipment to be transported by Gozal,

---

[4] In accordance with Loper Bright Enterprises v. Raimondo, the Court does not defer to DOT's definitions, but may consider the various "'factors which give [the definitions] power to persuade … .'" See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 388 (2024) (quoting Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)).

a licensed motor carrier"), ¶ 65 ("Perfect acted as a property broker pursuant to 49 U.S.C. § 14916 when it contracted Gozal to transport the Shipment"), ¶ 67 ("Perfect, acting as a property broker, unlawfully tendered the Shipment to Gozal").[5] But these statements are legal conclusions which the Court must disregard. The Court must determine whether Landstar alleges sufficient <u>facts</u> to make it plausible that Perfect acted as a broker when it contracted with Gozal.

Upon review of the Amended Complaint, it appears that Landstar's only factual allegation arguably supporting the conclusion that Perfect acted as a broker is that Perfect contracted with Gozal and tendered the shipment to it. <u>See</u> Amended Complaint ¶¶ 23, 65, 67, 74. But subcontracting does not transform a motor carrier into a broker under the MAP-21 Act or the Interstate Commerce Act more broadly. <u>See</u> 49 C.F.R. § 371.2 ("Motor carriers … are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.").

Moreover, Landstar's allegations and the provisions in the attached

---

[5] The Court notes that paragraphs 65 and 67 are alleged only in Count V, which asserts a claim under 49 U.S.C. § 14916 for unlawful brokerage activities against Perfect. <u>See</u> Amended Complaint ¶¶ 62–69. Indeed, it is questionable whether Landstar pleads that Perfect acted as a broker in Count VI. <u>See</u> Amended Complaint ¶¶ 70–75. However, even considering allegations located elsewhere in the Amended Complaint, Landstar's allegations that Perfect acted as a broker are legal conclusions which the Court must disregard.

Perfect Agreement appear to undermine a conclusion that Perfect acted as a property broker. Indeed, Landstar alleges that Perfect accepted legal responsibility for the shipment. See Amended Complaint ¶ 20 ("Governed by the Perfect Agreement . . . Landstar arranged for Perfect to transport the Shipment"), ¶ 22 ("[A] dispatcher . . . accepted tender of the Shipment from Landstar on behalf of Perfect"); see also Perfect Agreement §§ 8, 11 (making Perfect liable for damage to or loss of the shipment). As such, even construing Landstar's allegations as true, Perfect did not act as a broker when it engaged Gozal to transport the cargo. See Kondos v. Cobra Van Lines, LLC, No. 0:24-cv-61119-DSL, 2024 WL 5264452, at *3–4 (S.D. Fla. Nov. 27, 2024) (dismissing a MAP-21 claim when the plaintiff failed to allege facts supporting that the defendant acted as a broker and alleged only that the defendant hired contract laborers to unload and move the cargo); Landstar Ranger, Inc. v. Triple M Logistics, Inc., No. 3:22-cv-56-HES-LLL, 2023 WL 4925870, at *3 (M.D. Fla. June 28, 2023) (finding at summary judgment that a company acted as a motor carrier because a written contract stated that the company was solely responsible for claims of loss).

Overall, with regard to Count VI, the Amended Complaint fails to contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Indeed, the well-pleaded facts "do not permit the court to infer more than

the mere possibility of misconduct." Id. at 679. As a result, Count VI of the Amended Complaint must be dismissed.

Accordingly, it is

**ORDERED:**

1. Defendant Gozal Incorporated's Supplemental Motion to Dismiss as to Counts IV and VI of Plaintiff's Amended Complaint and Supporting Memorandum of Law (Doc. 29) is **GRANTED in part** and **DENIED in part.**

2. The Motion is **GRANTED** to the extent that Count VI is **DISMISSED**.

3. The Motion is **DENIED** in all other respects.

**DONE AND ORDERED** in Jacksonville, Florida, this 5th day of December, 2025.

*[signature]*
MARCIA MORALES HOWARD
United States District Judge

Lc35

Copies to:

Counsel of Record